Case No. 17-15307

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

MONICA SUD, individually
and on behalf of all those similarly situated, *et al.*,
*Plaintiffs and Appellants,*
v.
COSTCO WHOLESALE CORPORATION, a Washington
Corporation,

*Defendant and Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
HON. JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE
(Case No. 15-CV-03783-JSW)

---

**APPELLANTS' OPENING BRIEF**

NIALL P. MCCARTHY (SBN 160175)
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

DEREK G. HOWARD (SBN 118082)
derek@derekhowardlaw.com
**HOWARD LAW FIRM**
42 Miller Avenue
Mill Valley, CA 94941-1904
Telephone: (415) 432-7192
Facsimile: (415) 524-2419

DANIEL J. MULLIGAN (SBN 103129)
dan@jmglawoffices.com
**JENKINS MULLIGAN & GABRIEL LLP**
10085 Carroll Canyon Road Suite 210
San Diego, CA 92131-1100
Telephone: (858) 527-1792
*Counsel for Plaintiffs and Appellants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF DEFINITIONS ...................................................................... 1

I.    JURISDICTION ........................................................................ 2

II.   ISSUES PRESENTED ............................................................... 2

III.  STATEMENT OF THE CASE .................................................. 7

    A.    Procedural Background ..................................................... 8

    B.    Factual Background ........................................................... 9

IV.   SUMMARY OF ARGUMENT ............................................... 15

V.    ARGUMENT........................................................................... 17

    A.    Standard of Review is *De Novo* ...................................... 17

    B.    Summary of Eight Related Cases ..................................... 18

    C.    Costco Has a Duty to Disclose Forced Labor in Its Supply Chain .. 23

    D.    A Duty to Disclose Arises from Costco's Superior Knowledge of Material Information ......................................................... 27

        1.    Costco Did Not Disclose Slavery, Instead Making Partial Representations While Suppressing Material Facts ................. 31

2. UCL and CLRA Consumer Omissions Claims Are Not Limited to Safety Concerns .......................................................................... 34

   (a) *Wilson* Used Unnecessarily Broad Language and Has Been Applied Well Beyond its Facts...............................................35

   (b) Recent California Decisions Make Clear That UCL and CLRA Omissions Claims Are Not Limited to Safety Concerns...................................................................................39

      1. Materiality and the Four-Factor Test as Touchstones for Consumer Disclosure Do Not Create a Slippery Slope 45

      2. The UCL Fraudulent Prong, CLRA, and FAL............ 48

      3. The CLRA and the UCL Unlawful Prong................... 49

      4. The UCL Unfair Prong................................................. 51

      5. Costco is Not Shielded From Liability by the Safe Harbor Doctrine—the Supply Chains Act Provides no Safe Harbor ................................................................. 53

      6. Plaintiffs Have Standing to Seek Injunctive Relief .... 56

VI. CONCLUSION ..................................................................................... 58

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (2011) ........................................................................44

*Andrade v. City of Phoenix*,
  692 F.2d 557 (9th Cir. 1982) ...........................................................44

*Armstrong v. United States*,
  756 F.2d 1407 (9th Cir. 1985) ..........................................................17

*Aron v. U-Haul Co. of Cal.*,
  143 Cal. App. 4th 796 (2006) ...........................................................55

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................18

*Azoulai v. BMW of N. Am. LLC*,
  No. 16-cv-00589-BLF, 2017 U.S. Dist. LEXIS 57121
  (N.D. Cal. Apr. 13, 2017) .................................................................37

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) .............................................38

*Barber v. Nestlé USA, Inc.*,
  154 F. Supp. 3d 954 (C.D. Cal. 2015) ...............................................18

*Beeman v. TDI Managed Care Servs., Inc.*,
  449 F.3d 1035 (9th Cir. 2006) ..........................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................... 17, 27

*Cabral v. Supple, LLC*,
  2012 U.S. Dist. LEXIS 137365 (C.D. Cal. Sept. 19, 2012) ...............57

*Cel-Tech, Communications, Inc., v. Los Angeles Cellular Telephone Co.*,
  20 Cal 4th 163 (1999) ................................................................ 54, 55

*Buller v. Sutter Health*,
   160 Cal. App. 4th 981 (2008) ...............................................................26

*Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011) ....................................................... passim

*Colony Cove Props., LLC v. City of Carson*,
   640 F.3d 948 (9th Cir. 2011) .................................................................7

*Dana v. Hershey Co.*,
   180 F. Supp. 3d 652 (N.D. Cal. 2016)................................... 22, 24, 36

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) .............................................................34

*Daugherty v. American Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) ........................................................ passim

*Davis v. HSBC Bank*
   691 F.3d 1152 (9th Cir. 2012) .............................................................56

*Day v. AT & T Corp.*,
   63 Cal. App. 4th 325 (1998) ........................................................ 33, 48

*De Rosa v. Tri-Union Seafoods, LLC*,
   2016 U.S. Dist. LEXIS 5497 (C.D. Cal. Jan. 15, 2016).......................18

*Dean v. Colgate-Palmolive Co.*,
   2015 U.S. Dist. LEXIS 80150 (C.D. Cal. June 17, 2015)....................58

*Diamond Multimedia Sys., Inc. v. Superior Court*,
   19 Cal. 4th 1036 (1999) ......................................................................31

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012)................................................37

*Edwards v. Ford Motor Co.*,
   603 F. App'x 538 (9th Cir. 2015);.......................................................34

*Elias v. Hewlett-Packard Co.*,
  2014 U.S. Dist. LEXIS 16836 (N.D. Cal. Feb. 5, 2014) ............................... 29, 48

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................. 27, 29, 30, 33

*Gray v. Toyota Motors Sales*,
  554 F. App'x 608 (9th Cir. 2014) ........................................................................34

*Heliotis v. Schuman*,
  181 Cal. App. 3d 646 (1986) ...............................................................................26

*Henry A. v. Willden*,
  678 F.3d 991 (9th Cir. 2012) ...............................................................................17

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .............................................................................47

*Hodges v. Apple, Inc.*,
  640 F. App'x 687 (9th Cir. 2016); ......................................................................34

*Hodsdon v. Mars, Inc.*,
  162 F. Supp. 3d 1016 (N.D. Cal. 2016) ............................................. 21, 22, 24, 36

*Hofman v. Fifth Generation, Inc.*,
  2015 U.S. Dist. LEXIS 65398 (S.D. Cal. Mar. 18, 2015) ...................................30

*Hughes v. Big Heart Pet Brands*,
  2016 U.S. Dist. LEXIS 5508 (C.D. Cal. Jan. 15, 2016). .....................................18

*In re Lenovo Adware Litigation*,
  2016 U.S. Dist. LEXIS 149958 (N.D. Cal. Oct. 27, 2016) .......................... 42, 43

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ..................................................................29

*In re Seagate Tech. LLC Litig.*,
  233 F. Supp. 3d 776 (N.D. Cal. 2017) .................................................................37

*Johnson v. Harley-Davidson Motor Co. Grp*., LLC
    285 F.R.D. 573 (E.D. Cal. 2012) ..........................................................................29

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ........................................................................................49

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012)..........................................................................37

*Kramer v. Toyota Motor Corp*.,
    668 F. App'x 765 (9th Cir. 2016)..........................................................................34

*Krumme v. Mercury Ins. Co.*,
    123 Cal.App.4th 924 (2004). ...............................................................................55

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ........................................................................................47

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) .............................................................................27

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ...............................................................................59

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) .............................................................................50

*Lilly v. ConAgra Foods, Inc*.,
    743 F.3d 662 (9th Cir. 2014) .................................................................... 49, 58

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ...............................................................................26

*Loeffler v. Target Corp*.,
    58 Cal. 4th 1081 (2014). .....................................................................................31

*Lozano v. AT&T Wireless Service, Inc.*,
    504 F.3d 718 (9th Cir. 2007) .................................................................... 51, 53

*Marsikian v. Mercedes Benz USA, LLC*,
  2009 U.S. Dist. LEXIS 117012, (C.D. Cal. May 4, 2009) ...................................33

*Mass. Mutual Life Ins. Co. v. Superior Court*,
  97 Cal.App. 4th 1282 (2002) ...............................................................................24

*McCoy v. Nestle United States, Inc.*,
  173 F. Supp. 3d 954 (N.D. Cal. 2016)...................................................... 22, 24, 36

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004) ...............................................................................17

*Mollicone v. Universal Handicraft, Inc.*,
  2017 U.S. Dist. LEXIS 14125 (C.D. Cal. Jan. 30, 2017) ....................................57

*Norcia v. Samsung Telecomm. Am., LLC*,
  No. 14-cv-00582-JD, 2015 U.S. Dist. Lexis 110454
  (N.D. Cal. Aug. 20, 2015)............................................................................. 41, 43

*Oestreicher v. Alienware Corp.*,
  322 F. App'x 489 (9th Cir. 2009) ........................................................................34

*Outboard Marine Corp. v. Superior Court*,
  52 Cal. App. 3d 30 (1975) ............................................................................ 24, 40

*Owen v. United States*,
  713 F.2d 1461 (9th Cir. 1983). ...........................................................................43

*Pastoria v. Nationwide Insurance*,
  112 Cal. App. 4th 1490 (2003) ............................................................................53

*People v. Toomey*,
  157 Cal. App. 3d 1 (1984) ...................................................................................24

*Prata v. Superior Court*,
  91 Cal. App. 4th 1128 (2001) ..............................................................................48

*Rasmussen v. Apple Inc.*,
  27 F. Supp. 3d 1027 (N.D. Cal. 2014)..................................................................35

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ................................................................49

*Ries v. Ariz. Bevs. USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)................................................. 57, 58

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) .................................................... 51, 53

*Rushing v. Williams-Sonoma, Inc.*,
   2017 U.S. Dist. LEXIS 28227 (N.D. Cal. Feb. 28, 2017), ...................43

*Rutledge v. Hewlett-Packard, Co.*
   238 Cal. App. 4th 1164 (Ct. App. 2015)....................................... passim

*Sloan v. GM LLC*,
   No. 16-cv-07244-EMC, 2017 U.S. Dist. LEXIS 120851
   (N.D. Cal. Aug. 1, 2017)....................................................................37

*Smith v. Ford Motor Co.*,
   462 F. App'x 660 (9th Cir. 2011) .......................................................34

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
   85 Cal. Rptr. 2d 301 (Ct. App. 1999) .................................................53

*Stanwood v. Mary Kay, Inc.*,
   941 F. Supp. 2d 1212 (C.D. Cal. 2012) .................................. 19, 21, 37

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...........................................................18

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015) ................30

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   950 P.2d 1086 (Cal. 1998)................................................................25

*Strickrath v. Globalstar, Inc.*,
   2008 U.S. Dist. LEXIS 12190 (N.D. Cal. Feb. 6, 2008) .....................38

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. 2017) .......................................................... passim

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) ................................................................ 20, 35

*Vitt v. Apple Comput., Inc.*,
469 F. App'x 605 (9th Cir. 2012) .........................................................34

*Wang v. Massey Chevrolet*,
97 Cal. App. 4th 856 (2002) ...............................................................49

*Wershba v. Apple Comput., Inc.*,
91 Cal. App. 4th 224 (2001) ...............................................................31

*Williams v. Gerber Prods. Co*.,
552 F.3d 934 (9th Cir. 2008) ......................................................... 48, 49

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ..........................................................34

*Wilson v. Hewlett-Packard Co*.,
668 F.3d 1136 (9th Cir. 2012). ................................................................ passim

*Wirth v. Mars Inc.*,
2016 U.S. Dist. LEXIS 14552 (C.D. Cal. Feb. 5, 2016) ........................ 20, 24, 36

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
594 F.3d 1087 (9th Cir. 2010) ..........................................................17

**Statutes**

28 U.S.C. § 1291 .......................................................................................2

28 U.S.C. § 1332 (d) ................................................................................2

Cal. Bus. & Prof. Code § 17200 ...................................................... 25, 48

Cal. Bus. & Prof. Code § 17500 .......................................... 1, 25, 48, 50

Cal. Civ. Code § 1710(3) .......................................................................25

ix

Cal. Civ. Code § 1714.43 (c)(1)-(5)...................................................................54

Cal. Civ. Code § 1714.43(a)(1) ........................................................................6

Cal. Civ. Code § 1714.43 ................................................................... 1, 12, 50

Cal. Civ. Code § 1714.43(d) ...........................................................................55

Cal. Civ. Code § 1750...................................................................... 1, 25, 50

Cal. Civ. Code § 1760....................................................................................48

Cal. Civ. Code § 1770................................................................................ 25, 49

Cal. Penal Code § 236....................................................................................50

Cal. Penal Code § 237....................................................................................50

Fed. R. App. P. 4(a)(1)(A) ..............................................................................2

Fed. R. Civ. P. 8(a)(2) ....................................................................................17

Fed. R. Civ. P 12............................................................................................8

**Other Authorities**
Counsel's Dig., Sen. Bill 556,
   ch. 556, §2(h), (2010 Reg. Sess.).........................................................52

**Rules**
9th Cir. R. 28-2.5 ............................................................................................6

**TABLE OF DEFINITIONS**

| Short Citation | Long Citation |
|---|---|
| CLRA | Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* |
| FAC | Plaintiffs' First Amended Complaint in *Sud v. Costco* (ER 285-242) |
| FAL | False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* |
| Supply Chains Act | California Transparency in Supply Chains Act of 2010, Civil Code § 1714.43 (effective January 1, 2012) |
| UCL | Unfair Competitions Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* |

## I.      JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1332 (d) (diversity jurisdiction as amended by the Class Action Fairness Act).  The court below, Honorable Jeffrey S. White, granted a motion to dismiss with prejudice and entered judgment.  The notice of appeal was timely under Fed. R. App. P. 4(a)(1)(A).  The Court has appellate jurisdiction under 28 U.S.C. § 1291.

## II.      ISSUES PRESENTED

Although this case was the first filed of eight consumer class actions based on similar issues of liability for slavery-tainted food chains, this is the last case to be dismissed by the district court without leave to amend and is thus the last case to be briefed.[1]

This action challenges Costco Wholesale Corporation's ("Costco") failure to disclose the use of slave labor in its product supply chain for farmed frozen prawns.  On behalf of a consumer class, plaintiffs-appellants Monica Sud and Cecilia Jacobo

---

[1] *See* Statement of Related Cases listing the "Related Cases."

2

("plaintiffs") allege that this omission violates the UCL, CLRA, and FAL.

All of the Related Cases present unusual circumstances, involving different products, companies and supply chains. However, all are consumer human rights cases. They are not product safety or product warranty cases (the more typical UCL/CLRA/FAL case) but rather focus on the need to disclose inhumane conduct to the people ultimately buying these tainted products so that they can make an actual decision to buy or not.

The appeal presents four issues for review:

1.    California consumer protection laws obligate a defendant to disclose material information where the defendant has superior knowledge of that information. Here Costco has superior knowledge regarding its own supply chains and the sourcing of seafood that it sells in its stores, including that its supply chain is tainted by slave labor. Because of its economic power in the region and its supplier/buyer agreements, Costco actually has the ability to control the labor conditions on boats and to end the use of slave labor. Excerpts of Record ("ER") 233 (¶ 179.) Despite Costco's knowledge

of the widespread use of forced labor on the boats in its supply chain and its specific policies prohibiting forced labor, Costco continues to purchase prawns from companies tied to the slave trade. *Id.* Given Costco's superior knowledge, plaintiffs assert that Costco has a duty to disclose, at the point of sale, the use of slave labor in its product supply chain.

      2.      Given the duty to disclose, the complaint states claims for relief under the UCL, CRLA and FAL as follows:

      (a)      California's UCL, CLRA, and FAL prohibit conduct that is likely to receive a reasonable consumer. Plaintiffs contend that Costco's failure to disclose known slave labor in its supply chain for seafood products is likely to deceive a reasonable consumer who would otherwise not purchase the prawns.

      (b)      California's CLRA prohibits material omissions as to source, characteristics, and standards. Plaintiffs' CLRA claim is based on Costco's failure to disclose that its supply chain is not slave free is likely to deceive a reasonable consumer regarding the seafood's source (from boats using

slave labor) and characteristics/standard (produced by slaves). It is beyond dispute that the use of slave labor to produce a product is material to consumers. Thus, plaintiffs' CLRA claim, as well as their UCL unlawful prong claim, are actionable.

(c)     Plaintiffs also assert that Costco's conduct is unfair. The first test for violation of the UCL unfair prong requires that the claim be tethered to a legislative policy. Plaintiffs' claim of undisclosed slave labor is tethered to the United Nation's Declaration of Human Rights, which forbids slave labor and has been adopted by the United States—indeed the prohibition against slavery is universal. This provides an adequate basis for a claim under the UCL unfair prong.

(d)     The second test for violation of the UCL unfair prong requires that the claim involve immoral conduct with harm outweighing its benefits. Plaintiffs allege rather obviously that slave labor is immoral and that the harm – economic loss and unwitting consumer contribution to the

proliferation of slave labor in violation of international

norms prohibiting it – outweighs any lower price that the

slave labor permits, particularly where plaintiffs allege that

the product has no value precisely for that reason.  Again,

this adequately supports the UCL unfair prong.

3.      California's Supply Chain Act requires that businesses such as

Costco are required to "disclose their efforts to eradicate slavery and

human trafficking from their direct supply chains."  Cal. Civ. Code at

§ 1714.43(a)(1). [ER 232].  Costco claims that California's safe

harbor doctrine when applied to the Supply Chains Act shields it from

liability.  However the doctrine shields a defendant from liability for

nondisclosures only where the nondisclosure is clearly permitted by

the statute in question or a plaintiff's claim is expressly barred.  Given

that the Supply Chains Act does not clearly permit Costco's omission

of information regarding its tainted supply chain or expressly forbid

plaintiffs' causes of action – and includes a savings clause – the safe

harbor doctrine does not shield Costco from liability.[2]

---

[2] The first two issues were "raised and ruled on" at [ER 7] and [ER 8-18]. 9th Cir. R. 28-2.5. The third and fourth issues, were raised by

4.      Costco also claims that plaintiffs lack standing for injunctive

relief because they do not contend that they would by the prawns

again.  However, this is incorrect as the FAC alleges that plaintiffs

would purchase the products again under certain circumstances.  [ER

197].  Further, even if plaintiffs are not likely to be repeat customers

because they are now educated about the use of slave labor, the

narrowed reading of Article III standing advocated by Costco would

thwart the legislative intent to protect consumers.  This conclusion is

consistent with a growing body of district court decisions.

## III.      STATEMENT OF THE CASE

With this matter at the pleading stage, the facts are drawn from

the complaint and judicially noticed documents.  The Court "accepts

factual allegations in the complaint as true and construes the pleadings

in the light most favorable to" plaintiffs.[3]  Although Judge White

---

Costco in its motion to dismiss at [ER 175-177] and [ER 179], but
were not reached by the trial court [ER 7].  They are addressed briefly
now because plaintiffs anticipate they may be argued as alternative
grounds for affirmance.

[3] *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th
Cir. 2011). Internal quotations and citations are omitted unless
otherwise indicated.

describes some of the facts underlying *Sud* – and concludes that "[t]he facts described in the FAC are tragic and "raise significant ethical concerns"" (*Sud v. Costco Wholesale Corp.,* 229 F. Supp. 3d 1075, 1080 (N.D. Cal. 2017)), we include a more complete factual summary:

## A.    Procedural Background

This matter was decided on a motion to dismiss under Rule 12 F. R. Civ. P., so only pleading activity was involved.  The complaint was filed on August 19, 2015.  [ER 579].  Both defendants moved to dismiss, arguing that the one named plaintiff was not an appropriate party and that, in any event, no claims had been stated.  The Court granted these motions, with leave to amend, on January 15, 2016.  ER 20.  A First Amended Complaint was filed on February 19, 2016, adding an additional plaintiff.  Both defendants again moved to dismiss, although they withdrew the arguments regarding the plaintiffs' ability to bring suit at all.  The Court granted the motions to dismiss on January 24, 2017 and entered Judgment on the same date.  [ER 1-20].  A timely appeal was filed.

/ / /

## B. Factual Background

At its heart this case is about corporate disregard of California's consumer protection laws. Plaintiffs challenge the use of slave labor in the production of food that is sold in California, since this inhumane product is marketed without any disclosure of its seamy origins.

While the legal basis for the action is plain and straightforward, the underlying facts compel the effort to halt this damnable practice. Indeed, plaintiffs unequivocally state:

> Defendant Costco continues to unlawfully induce consumers to buy Costco farmed prawn products, supplied by Southeast Asian suppliers, including defendant CP Foods despite knowing that the products are tainted by slave labor. Further, defendants profit because consumers unknowingly create increased sales and profits for defendants, buying from Costco at a price higher than they would otherwise be willing to pay if, indeed, they would purchase such tainted prawns willingly at all. This case seeks to halt these inhumane practices and obtain relief for defendants' unlawful and unethical conduct. [ER00191-192].

It is not the profit making but the source of those profits that mandates that this action proceed. The use of slaves to produce this food for California consumers is morally, ethically and legally deplorable and unacceptable. Illustrating the depth of depravity at

9

issue in these practices, some fishermen have been shackled, beaten or tortured, and many have been murdered. [ER00192 (¶ 24)]. Equally important, Costco is aware, as most recently made evident in the United States Department of State August 2015 TIP report, that local governments are not only suffering from corruption and outright cooperation with human traffickers but are otherwise simply unable or unwilling to eliminate human trafficking from the farmed prawn industry. Costco unlawfully continues to turn a blind eye to these and other indictments of the farmed prawn industry. [ER 195 (¶ 27)].

Further, Costco publicly and falsely represents that it does not tolerate human trafficking and slavery in its supply chain, yet it continues to purchase tainted farmed prawns. [ER 190 (¶ 19)]. Costco advertises that "[i]n 1999, Costco adopted a supplier Code of Conduct ("The Code") and revised the Code in 2010." The Code expressly prohibits human rights abuses, including, but not limited to, human trafficking, physical abuse of workers, restricting workers' freedom of movement, confiscation of passports or worker documentation, failure to pay minimum wage, forced or mandatory overtime, and illegal child labor. The Code further states that Costco

requires "suppliers to comply with local laws regarding workers'
minimum age, rest days and overtime wages. Costco's suppliers
contractually agree to follow the Code and to ensure that their sub-
suppliers also comply." To ensure that all of its suppliers and sub-
suppliers are in compliance with The Code, Costco states that it
conducts audits of its suppliers. As part of these purported efforts to
clean up its supply chain, in July, 2014, Costco helped initiate a
"Shrimp Sustainable Supply Chain Task Force" ("SSSCTF"). Part of
the SSSCTF's stated goals were to halt the use of slave labor in the
supply chain for farmed prawns from Southeast Asia. However, as of
the date of the complaint, Costco has failed and refused to actually
implement procedures that would halt the use of slave labor by its
suppliers. [ER 200-201 (¶¶ 59-62)].

In reality, Costco allows for companies to underreport or not
report human rights abuses. This gives Costco an avenue to ignore
widespread industry knowledge about slave labor. Costco must be
held accountable for the statements that it chooses to make to
consumers because they rely on such statements for their purchase
decisions. While common sense dictates that consumers do not want

11

to purchase products tarnished by slavery in the supply line, empirical research also compels this conclusion. As alleged, a FishWise study found that 88% of consumers stated that they would stop buying a product if it was associated with human rights abuses. [ER 226 (¶ 146)]. Costco is aware it would lose sales if the slavery issues were made public. [ER 205 (¶ 68)].

These statements by Costco directly impact consumers. Furthermore, pursuant to the California Transparency in Supply Chains Act of 2010, Civil Code § 1714.43, which went into effect January 1, 2012, Costco is legally mandated to disclose "its efforts to eradicate slavery and human trafficking from its direct supply chain for tangible goods offered for sale." *Id*. The Supply Chains Act requires certain companies (Costco included) to disclose, the extent to which they: (1) engage in verification of product supply chains to evaluate human trafficking and slavery, (2) conduct audits of suppliers to evaluate supplier compliance with company standards for trafficking and slavery in supply chains, (3) require direct suppliers to certify that materials incorporated into the product comply with the laws regarding slavery and human trafficking in the country or

12

countries in which they are doing business, (4) maintained internal

accountability standards, and (5) provide company employees and

management, who have direct responsibility for supply chain

management, training on human trafficking and slavery. In response

to these requirements Costco has published its "Costco Disclosure

Regarding Human Trafficking and Anti-Slavery,"

http://www.costco.com/disclosure-regarding-human-trafficking-and-

anti-slavery.html, (last visited August 18, 2015). Unfortunately, this

disclosure misleads consumers by telling them that Costco prohibits

human rights abuses in its supply chain. This is not true. As alleged

in the FAC, Costco knowingly buys tainted products, including the

prawns at issue in this case. [ER 188, 190-191,201 (¶¶ 12, 16, 22,

63)].

Indeed, Costco knows all the facts about the slave labor in its

supply line. As alleged in the FAC, Costco was aware that the farmed

prawns that it purchases from Southeast Asian producers are derived

from a supply chain that depends upon documented slavery, human

trafficking and other illegal labor abuses. [ER 188, 190, 195, 201].

As noted, Costco represents in writing that The Code covers both

suppliers and sub-suppliers, [ER 190 at ¶ 19 (text of Costco Disclosure), but does nothing to implement its policies. [ER 200-201]. The human rights abuses related to the fisheries and farmed prawns are well documented and are directly traced to Costco as the end buyer. [ER 192, 201]. Plaintiffs also allege that Costco had more access to and generally requisite superior knowledge of the human rights abuses: "Costco is aware that consumers lack the material information that human trafficking, including how slave labor and other repugnant labor practices taints Costco's supply chain." [ER 195]. In addition, Costco has the power to dictate terms to its suppliers, including labor conditions, but continues to knowingly sell prawns derived from a tainted supply chain. [ER 233]. Finally, plaintiffs are alleged not to have known about the tainted supply chain. [ER 191] (Consumers unknowing of issue). If they had, they would not have purchased the product. [ER 191, 195, 205, 227].

These facts, completely undisputed at this time, are more than sufficient to satisfy the standards of Rule 8. This case must be allowed to proceed.

/ / /

## IV.      SUMMARY OF ARGUMENT

Appellants submit that Costco had a duty to disclose that slaves are used to produce its prawns.  Governing California law imposes this duty because the information is material to consumers and Costco has superior knowledge on the subject.  The reasonable consumer would deem material – indeed, would want to know – that by purchasing farmed prawns sourced from Southeast Asia from Costco, the purchaser is also sustaining slave labor conditions.  On this issue, the Court should take this opportunity to align itself with current California law and clarify that consumer omission claims under the UCL, CLRA, and FAL are not artificially restricted to safety and warranty concerns.  Limiting omissions claims to safety issues guts the state's most venerable consumer protection statutes.  This perceived restriction, which has recently confused several district courts, does not reflect current California law and violates the *Erie* doctrine.

In light of Costco's duty to disclose, plaintiffs state viable claims for relief.  Because Costco's omission is highly material to purchasing decisions, consumers are likely to be deceived by Costco's

15

failure to include a simple disclosure on its slave labor-derived seafood products. These allegations suffice to state claims for relief under the CLRA, FAL and UCL fraudulent prong. The UCL unlawful prong is well pled due to Costco's other statutory violations. And, in addition to Costco's unethical reliance on slave labor in its supply chain, the UCL unfair prong is well pled by tethering plaintiffs' claim to several legislative policies.

The record and relevant law establish that the complaint pleads viable causes of action under the California consumer protection statutes.

Further, although the District Court did not reach the safe harbor doctrine, the doctrine does not apply because the statute cited by Costco as establishing a safe harbor—the Supply Chains Act—does not create such a safe harbor.

Finally, plaintiffs have standing to seek injunctive relief because plaintiffs would be future consumers of the prawns at issue if certain conditions are met [ER 197]. Even if they chose not to purchase the product in the future (if Costco's practices do not change) they have standing to seek injunctive relief because stripping

16

plaintiffs of the right to seek injunctive relief would nullify California's consumer protection laws.

This Court, therefore, should reverse the erroneous dismissal.

## V.     ARGUMENT

### A.     Standard of Review is *De Novo*

A motion to dismiss is reviewed *de novo*. *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012). Apart from the procedural mode, the issues presented are "questions of law" reviewed independently. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010); *see Beeman v. TDI Managed Care Servs., Inc*., 449 F.3d 1035, 1038 (9th Cir. 2006) (statutory interpretation); *Armstrong v. United States*, 756 F.2d 1407, 1409 (9th Cir. 1985) (duty); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 619 (9th Cir. 2004) (stating claim).

Fed. R. Civ. P. 8(a)(2) mandates only "a short and plain statement of the claim showing that the pleader is entitled to relief." Reversal of an order dismissing a complaint is required unless plaintiffs fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The U.S.

Supreme Court instructs: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court further instructs: "[The] complaint is required only to give the notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). Appellants meet these standards in their FAC.

## B. Summary of Eight Related Cases

As previously mentioned, *Sud* was the first of the eight related class actions to be filed but the last to arrive at the Ninth Circuit. The eight cases were decided between December 9, 2015 and January 24, 2017. The eight cases unfolded as follows:

*Barber*,[4] *Hughes*,[5] and *De Rosa*[6] were decided by Judge Carney of the Central District. Judge Carney's decisions hinged on a

---

[4] *Barber v. Nestlé USA, Inc*., 154 F. Supp. 3d 954 (C.D. Cal. 2015).
[5] *Hughes v. Big Heart Pet Brands*, 2016 U.S. Dist. LEXIS 5508 (C.D. Cal. Jan. 15, 2016).
[6] *De Rosa v. Tri-Union Seafoods, LLC*, 2016 U.S. Dist. LEXIS 5497 (C.D. Cal. Jan. 15, 2016).

single conclusion – that the claims were barred by the safe harbor

doctrine – he declined to reach the other issues raised by the

defendants.  As a result, Judge Carney did not address the *Wilson*[7]

versus *Stanwood*[8] dichotomy[9] that figures prominently in the

remaining five decisions in the Related Cases.  Perhaps this is due in

part to the fact that Judge Carney decided *Stanwood* (which plaintiffs

in the Related Cases rely upon to argue that claims based solely on

omissions are actionable).

---

[7] *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136 (9th Cir. 2012).
[8] *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1225 (C.D. Cal. 2012).
[9] *Wilson* involved a consumer claim that a laptop manifested a design defect after the warranty period in violation of the CLRA and UCL. *Wilson*, 668 F.3d at 1138.  In *Wilson* this Court stated that  "California courts have generally rejected a broad obligation to disclose, adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty v. American Honda Motor Co*., 144 Cal. App. 4th 824 (2006).  The *Wilson* decision concludes with a sweeping statement that "California federal courts have generally interpreted *Daugherty* as holding that a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue."  *Id.*  In contrast, in *Stanwood* the Court followed state court precedent and concluded that in a non-product defect case with no warranty issues "a fact need only be material to trigger a duty to disclose."  *Id.* at 1221.

The fourth decision, *Wirth*,[10] was crafted by Judge Carter (also of the Central District). Judge Carter followed Judge Carney on the safe harbor doctrine but also addressed *Wilson* and *Stanwood* and chose to follow *Wilson*, holding that there is no duty to disclose in the absence of a safety concern. The *Wirth* decision's analysis of *Wilson* (*Wirth*, 2016 U.S. Dist. LEXIS 14552 *9-14) stands in stark contrast to Judge Carter's lengthy discussion of *Wilson* in the earlier non-human rights case of *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) in which he said that "[t]his Court is skeptical that *Wilson* accurately interpreted California law…" *id.* at 489, fn.9; *see also*, *Id.* at 488-490. Judge Carter aptly pointed out in *Tait* that "adhering to the holding in *Wilson* would appear to produce an absurd result in violation of the *Erie* doctrine: plaintiffs would be *unable* to sue in federal court to enforce the state statute, but *could* sue in state court to enforce the very same statute. *Id.* at 489, fn. 9.

---

[10] *Wirth v. Mars Inc.*, 2016 U.S. Dist. LEXIS 14552 (C.D. Cal. Feb. 5, 2016).

The fifth decision, *Hodsdon*,[11] was decided by Judge Seeborg of the Northern District. Judge Seeborg questioned whether the safe harbor doctrine applies but – *Hodsdon* rests on an analysis of *Wilson* versus *Stanwood*, plus a finding that an omission cannot form the basis of a FAL claim (but noting some conflict in authority) plus a finding that the practices at issue are not "unfair" under the UCL (but noting that "precise contours of an "unfair" business practice under the UCL are currently in flux"). *Id*. at 1026.

The sixth decision, *Dana*,[12] was decided by Chief Magistrate Judge Spero (also of the Northern District) and followed the reasoning of Judge Seeborg in *Hodsdon* (including Judge Seeborg's doubt that the safe harbor doctrine was applicable) but also found that even if a non-safety related issue could support a CLRA claim (and thus a UCL claim) dismissal was warranted because the slave labor at issue in *Dana* was not within the *exclusive* knowledge of the defendant. *Id.* at 665. Judge Spero declined to reach a separate First Amendment issue raised by the defendant. *Id.* at 669.

---

[11] *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016 (N.D. Cal. 2016).
[12] *Dana v. Hershey Co.*, 180 F. Supp. 3d 652 (N.D. Cal. 2016).

The seventh decision, *McCoy*,[13] was also decided by Judge Spero and followed the reasoning of *Dana*.

The eighth and final decision, this case, was issued by Judge White.[14]  Judge White also declined to reach the safe harbor doctrine defense (*Id.* at 1082) and instead dismissed on grounds similar to the rest of the analysis in *Hodsdon* (*Id.* at 1083, 1086-1090.)

Thus the eight dismissals in the Related Cases yield conflicting opinions as to whether the safe harbor doctrine applies and a widespread, at times contradictory and questionable analysis of *Wilson.*  There is, however, agreement running through the decisions that several aspects of the relevant jurisprudence lack clarity or are in "flux."

/ / /

---

[13] *McCoy v. Nestle United States, Inc.*, 173 F. Supp. 3d 954 (N.D. Cal. 2016).
[14] *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075 (N.D. Cal. 2017).

**C.    Costco Has a Duty to Disclose Forced Labor in Its Supply Chain**

In 2005, the Class Action Fairness Act ("CAFA") expanded diversity jurisdiction to mandate that most class actions brought under state law be tried in the Federal Courts, including plaintiffs' case here.

CAFA has resulted in a growing body of federal decisional law applying state statutes and interpreting state appellate precedent on those statutes. The need for federal courts to delve into state law on consumer issues can cause confusion. As relevant here, the scope of the UCL, CLRA, and FAL has become a subject of admitted confusion in district courts in this circuit. Most critically there is conflict on the question of whether material omission claims under the UCL, CLRA, or FAL in the Ninth Circuit are restricted to safety concerns.[15]

---

[15] Plaintiffs in the Related Cases have asked that the Ninth Circuit to certify the question to the California Supreme Court. This request led plaintiffs in this case to seek an extension to file their opening brief. Plaintiffs agree that a ruling by the California Supreme Court may be dispositive of this appeal. However it remains unclear whether the Ninth Circuit will certify the question or, if it does, if the Supreme Court will answer. Plaintiffs move forward with briefing to avoid further delay.

Costco contended it has no duty of disclosure under California law given that its seafood products are not a safety threat to consumers of the products. As discussed in the next section, uncertainty has reigned for years on whether material omission claims under the UCL, CLRA, or FAL in the Ninth Circuit are restricted to safety concerns. To frame this legal issue properly, plaintiffs review the foundational principles under California law. These principles dictate that Costco has a duty to disclose in this case.[16]

First, there is no question under California law that omission claims are actionable under state consumer protection statutes. *See, e.g., Mass. Mutual Life Ins. Co. v. Superior Court,* 97 Cal.App. 4th 1282, 1286, 1293 (2002) (UCL and CLRA claims); *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 36 (1975) (CLRA); *People v. Toomey*, 157 Cal. App. 3d 1, 16 (1984) (FAL). Moreover, although the statutes serve distinct purposes, the UCL, CLRA, and FAL are textually alike in providing no enumerated exceptions for

---

[16] This duty to disclose issue is a central issue in a number of the Related Cases, *see e.g.*, *Hodsdon,* 162 F. Supp. 3d at 1021; *McCoy, 173 F. Supp. 3d* at 966; *Dana,* 180 F. Supp. 3d at 664; *Wirth*, 2016 U.S. Dist. LEXIS 14552 *8-16.

when a material omission (as to the practices covered) will *not* trigger liability.[17]  The statutes in this respect are consistent with the statutory and common law preceding them.  The UCL was enacted in 1933, the FAL in 1941, and the CLRA in 1970.[18]  Long before, California made fraudulent omissions actionable on a case-by-case basis, without any categorical rule limiting omissions claims to safety or any other specific concern.  In 1872, the legislature defined "deceit" as "suppression of a fact, by one who is bound to disclose it."  Cal. Civ. Code § 1710(3).  The Civil Code left to the judiciary to elaborate when a person or entity is "bound" to disclose.

In 1986, consistent with the consumer protection statutes, the state Court of Appeal set forth the modern test for when California law imposes a duty to disclose.  The "four circumstances in which

---

[17] Cal. Bus. & Prof. Code § 17200 ("unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising"); *id.*, § 17500 (prohibiting "any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading"); Cal. Civ. Code § 1770 (listing 27 "proscribed practices").

[18] *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 950 P.2d 1086, 1097 (Cal. 1998) (UCL, discussing legislative evolution); Cal. Civ. Code § 1750 (CLRA); Cal. Bus. & Prof. Code § 17500 (FAL).

nondisclosure or concealment" of material facts constitute actionable fraud are: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Heliotis v. Schuman*, 181 Cal. App. 3d 646, 650 (1986). California courts have widely followed this formulation.[19]

In this case each of factors (2), (3) and (4) supports plaintiffs' position regarding required disclosure. (Plaintiffs concede there is no fiduciary relationship at issue and, thus, no claim under the first prong of *Heliotis*.)

*/ / /*

---

[19] *See*, *e.g., Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 254 (2011); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997); *cf. Buller v. Sutter Health*, 160 Cal. App. 4th 981, 988 (2008) (distinguishing and declining to follow federal decision applying four-factor test).

### D.    A Duty to Disclose Arises from Costco's Superior Knowledge of Material Information

First, plaintiffs rely on the **second prong** of the four-part test. To plead a duty to disclose under this prong, it suffices that Costco has "superior knowledge" of forced labor in its seafood supply chain and, as discussed, the use of forced labor is material to consumers.

Plaintiffs have little to no knowledge of and no obligation themselves to investigate Costco's practices, especially those occurring on fishing boats and factory farms in Southeast Asia. *See*, e.*g., Falk v. Gen. Motors Corp*., 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003). Although plaintiffs need not plead "detailed factual allegations" on Costco's superior knowledge (*Twombly*, 550 U.S. at 555), the complaint does so as outlined above. Among these allegations are that Costco was aware that the farmed prawns that it purchases from Southeast Asian producers are derived from a supply chain dependent upon documented slavery, human trafficking and other illegal labor abuses [ER 188, 190, 195, 201 (¶¶'s 12, 16, 27, 63], that Costco represents in writing that The Code covers both suppliers

27

and sub-suppliers [ER 190 at ¶ 19 (text of Costco Disclosure)], and

that the human rights abuses related to Thai fisheries and farmed

prawns are well documented and directly traced to Costco as the end

buyer. [ER 192, 201]. Thus, plaintiffs properly alleged specific facts

showing that Costco had superior knowledge. Relying upon these

facts, plaintiffs summarily claimed that Costco had the requisite

superior knowledge: "Costco is aware that consumers lack the

material information that human trafficking, including how slave

labor and other repugnant labor practices taints Costco's supply

chain." [ER 195, *see also*, ER 233]. The allegations of Costco's

superior knowledge of the slave labor in its supply chain are

sufficient, particularly where the plaintiffs are alleged not to have

known about the tainted supply chain. [ER 191 (consumers

unknowing of issue); ER 195 (Plaintiffs and consumers would not

have purchased product).)]

The four part test stated by *Collins v. eMachines, Inc.*, 202 Cal.

App. 4th 249, 255 (2011), and many other cases refers to "exclusive

knowledge." However, Courts after *Collins* have not applied

'exclusivity' literally or rigidly, but rather, as indicated above, analyze

"exclusivity" by examining whether the defendant simply had **superior knowledge**. *Johnson v. Harley-Davidson Motor Co. Grp*., LLC 285 F.R.D. 573, 583 (E.D. Cal. 2012) ("Since defendant was in a **superior position** to know of its defective engines, plaintiffs properly allege that defendant had exclusive knowledge of material facts not known to plaintiffs.") (Emphasis added). Numerous courts have used the "superior position" test. *See, e.g., In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014); *Elias v. Hewlett-Packard Co*., 2014 U.S. Dist. LEXIS 16836, at *33 (N.D. Cal. Feb. 5, 2014) ("*Elias II*"); *Falk* 496 F. Supp. 2d at 1096-97. It was unclear in the trial court's decision in the instant case whether Judge White accepted that the "superior position" test was the appropriate test to follow as the decision mentions exclusive and superior knowledge in passing without analysis. *Sud*, 229 F. Supp. 3d at 1087.

The trial court also seemed to find that there was some general knowledge available to plaintiffs. However, the availability of information on the Internet regarding the slave labor in Costco's supply chain does not undercut the existence of Costco's superior knowledge.

29

As explained by the district court in *Falk, supra*:

> It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the failed speedometers (as quoted in the complaint). Some may have. But GM is alleged to have known a lot more about the defective speedometers, including information unavailable to the public. Many customers would not have performed an Internet search before beginning a car search. **Nor were they required to do so**.

*Falk,* at 1096-97 (emphasis added); *see also Hofman v. Fifth Generation, Inc*., 2015 U.S. Dist. LEXIS 65398, at *24-25 (S.D. Cal. Mar. 18, 2015). This analysis rings truer for consumer purchases of inexpensive goods at the grocery store. *Stoltz v. Fage Dairy Processing Indus., S.A*., 2015 U.S. Dist. LEXIS 126880, at *59-*60 (E.D.N.Y. Sept. 22, 2015) (a reasonable consumer will approach a decision to buy yogurt at a grocery store differently than a contract involving patents "the relative amount of time, research and deliberation a consumer is likely to invest prior to the point of sale in each case" are different).

Courts have routinely applied the "superior knowledge" standard to omission claims under California's consumer protection statutes. *See, e.g., Falk*, 496 F. Supp. 2d at 1091, 1096-97. This is

unsurprising because "California's consumer protection laws are among the strongest in the country." *Wershba v. Apple Comput., Inc.,* 91 Cal. App. 4th 224, 243 (2001). California "has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." *Diamond Multimedia Sys., Inc. v. Superior Court,* 19 Cal. 4th 1036, 1064 (1999). As the California Supreme Court has often reiterated, the UCL's "broad, sweeping language" furthers that interest. *Loeffler v. Target Corp*., 58 Cal. 4th 1081, 1125 (2014).

1.    **Costco Did Not Disclose Slavery, Instead Making Partial Representations While Suppressing Material Facts**

As an independent basis for their claims, plaintiffs rely on the **third and fourth prongs** of the four-part test.

Pursuant to the Supply Chains Act Costco is legally mandated to disclose "its efforts to eradicate slavery and human trafficking from its direct supply chain for tangible goods offered for sale." [ER232]. The Act requires certain companies (Costco included) to disclose, the extent they: (1) engage in verification of product supply chains to

evaluate human trafficking and slavery, (2) conduct audits of suppliers

to evaluate supplier compliance with company standards for

trafficking and slavery in supply chains, (3) require direct suppliers to

certify that materials incorporated into the product comply with the

laws regarding slavery and human trafficking in the country or

countries in which they are doing business, (4) maintained internal

accountability standards, and (5) provide company employees and

management, who have direct responsibility for supply chain

management, training on human trafficking and slavery. [ER232]. In

response to these requirements Costco has published its "Costco

Disclosure Regarding Human Trafficking and Anti-Slavery,"

http://www.costco.com/disclosure-regarding-human-trafficking-and-

anti-slavery.html, (last visited August 18, 2015). [ER190-191].

Unfortunately, the disclosure is highly misleading in so far as Costco

tells the public that Costco prohibits human rights abuses in its supply

chain. [ER190-191]. This is not in fact true. Costco knowingly buys

tainted products, including the prawns at issue in this case.

[ER00188, ER00190-191, ER00201].

An obligation to disclose also arises when, as here, "the defendant makes partial representations but also suppresses some material fact." *Falk*, 496 F. Supp. 2d at 1095 (denying motion to dismiss CLRA and fraud by omission claims); *Marsikian v. Mercedes Benz USA, LLC*, 2009 U.S. Dist. LEXIS 117012, at *13, *21 (C.D. Cal. May 4, 2009). Any consumer who sets out to perform internet or other research prior to purchase would be confronted with Costco's online statements forbidding the use of slave labor by its suppliers – absent disclosure that such slave labor is known to exist in the fishing operations supplying Costco's farmed prawns. [ER 89]. Such partial representations also give rise to a duty to disclose. *See generally Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998). Any argument that Costco conforms with the Supply Chains Act misses the point—Costco tells consumers that Costco <u>prohibits human rights abuses in its supply chain</u>. [ER 190-191]. The Supply Chains Act does not require Costco to tell customers that it prohibits human rights abuses. Costco chose to do that to appeal to consumers. Costco's inaccurate disclosures created its liability. [ER 89].

2.    **UCL and CLRA Consumer Omissions Claims Are Not Limited to Safety Concerns**

In some federal actions seeking to enforce California's consumer protection statutes in the Ninth Circuit, the clarity of the legal landscape for material omission claims was cast into uncertainty by *Wilson v. Hewlett-Packard Co.*[20] and its progeny.[21] This appeal and the appeals in the Related Cases present an opportunity for this Court to clarify a badly conflicted area of Ninth Circuit jurisprudence.  In light of recent California decisions, plaintiffs urge that the broad reading given *Wilson* by some district courts be brought into line with

---

[20] 668 F.3d 1136 (9th Cir. 2012). *Wilson* was authored by a trial judge from the Southern District of New York.

[21] With only two exceptions, the decisions in this line are memorandum dispositions. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017); *see also Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009); *Smith v. Ford Motor Co.*, 462 F. App'x 660, 663 (9th Cir. 2011); *Vitt v. Apple Comput., Inc.*, 469 F. App'x 605, 608 (9th Cir. 2012); *Gray v. Toyota Motors Sales*, 554 F. App'x 608, 609 (9th Cir. 2014); *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015); *Hodges v. Apple, Inc*., 640 F. App'x 687, 690 (9th Cir. 2016); *Kramer v. Toyota Motor Corp*., 668 F. App'x 765 (9th Cir. 2016).

current California law or at least limit *Wilson* to its facts (warranty cases).

        (a)     **_Wilson_ Used Unnecessarily Broad Language and Has Been Applied Well Beyond its Facts**

*Wilson* presented narrow circumstances.  The plaintiffs challenged an alleged design defect in a laptop computer that "manifested after the expiration of the warranty and created an unreasonable safety hazard" allegedly violating the CLRA and UCL. 668 F.3d at 1138.  *Wilson* first distinguishes cases when the defect arose, instead, during the warranty period.  *Id.* at 1142 & n.1.  But in affirming, the *Wilson* panel made unnecessary statements that have puzzled district judges and led to disparate readings of *Wilson* and different results in litigation.  *See*, *e.g., Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1033-37 (N.D. Cal. 2014) (discussing differing readings of *Wilson*); *see also, Tait* 289 F.R.D. at 488-490.

     *Wilson* put forth the following sweeping proposition: "California courts have generally rejected a broad obligation to disclose, adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty v. American Honda Motor*

*Co.*, 144 Cal. App. 4th 824 (2006)." 668 F.3d at 1141. The *Wilson* panel concluded: "California federal courts have generally interpreted *Daugherty* as holding that a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Id. Wilson* acknowledged the four-part test long applied by California courts, but stated that "for the omission to be material, the failure must [still] pose 'safety concerns.'" *Id.* at 1142.

*Wilson'*s unnecessary breadth has been interpreted – as it was by the district judges in the Related Cases who reached the issue – to add a "safety-only" restriction to omissions claims under California's leading consumer protection statutes. This requirement has no basis in the text of the statutes and is contrary to the purpose of the statutes. As with the Related Cases, the trial court's decision in *Sud* was heavily influenced by *Wilson*.[22] The broad reading some courts have

---

[22] Each case that has extended its reasoning beyond the safe harbor doctrine has treated *Wilson* as binding precedent: *Sud* at 1085-1087; *Wirth, v. Mars Inc.,* 2016 U.S. Dist. Lexis 14552 *3-6 & n.5; *Hodsdon*, 2016 U.S. Dist. Lexis 19268, at *5-6; *McCoy*, 2016 U.S. Dist. Lexis 41601 at *9-11; *Dana*, 2016.U.S. Dist. Lexis 41594 at *8-10.

given *Wilson* effectively repeals California's consumer protection statutes as to omissions claims unless the omission concerns a safety issue.[23]

The faulty underpinnings of the reasoning in *Wilson* are belied by the *Wilson* court's discussion of the numerous federal and state cases that have not required a safety defect, instead holding that a fact need only be material to be actionable. *Wilson*, at 1143. This discussion demonstrates that *Wilson*'s holding is narrowly applicable to product defect cases arising after a warranty period. In *Wilson* the Court had to acknowledge that non-safety omission claims are

---

[23] Many district courts have applied the *Wilson* safety-only proscription to bar California omissions claims whatever the facts. For decisions just this year, see as examples *Sloan v. GM LLC*, No. 16-cv-07244-EMC, 2017 U.S. Dist. LEXIS 120851, *18-19 (N.D. Cal. Aug. 1, 2017)(court essentially noting that its' hands were tied by *Wilson*); *Azoulai v. BMW of N. Am. LLC*, No. 16-cv-00589-BLF, 2017 U.S. Dist. LEXIS 57121, *26 (N.D. Cal. Apr. 13, 2017); *In re Seagate Tech. LLC Litig*., 233 F. Supp. 3d 776, 794 (N.D. Cal. 2017). But, illustrating the divergence, other district courts have read *Wilson's* limitation to govern only product based omissions claims outside a warranty period. *See, e.g., Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1225 (C.D. Cal. 2012); *Donohue v. Apple, Inc.,* 871 F. Supp. 2d 913, 926 (N.D. Cal. 2012); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 529 (C.D. Cal. 2012).

actionable when they arise during a warranty period (as in *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007)), and when they arise in cases involving services rather than manufactured products (as in *Strickrath v. Globalstar, Inc.*, 2008 U.S. Dist. LEXIS 12190 (N.D. Cal. Feb. 6, 2008).

    *Daugherty, supra*, upon which the *Wilson* court relied so heavily, was also a product defect action, accusing Honda, in violation of the CLRA and UCL, of "failing to disclose an engine defect that did not cause malfunctions in the automobiles until long after the warranty expired." 144 Cal. App. 4th 824, 827. The opinion gives no indication it was meant to apply beyond those facts to other CLRA and UCL omissions claims. Rather, the CLRA claim in *Daugherty* faltered because "[a]ll of plaintiffs' automobiles functioned as represented throughout their warranty periods, and indeed many still have experienced no malfunction." *Id*. at 834. And "*Daugherty* alleged no facts that would establish Honda was 'bound to disclose' the defect" she challenged. *Id*. at 836.

    The slave-tainted supply chain cases that are presently before this Court have nothing to do with product defects, product safety or

warranties. Plaintiffs are not trying to bring a product defect claim in contravention of a limited warranty. While consumer omissions claims may most often involve a product defect or warranty, neither will this always be the case, nor are the remedies limited to safety concerns.

As *Daugherty* articulated, in a UCL and CLRA omissions case as here, the threshold question on duty to disclose is simply whether the omission is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose" – without any artificial safety restriction. *Daugherty*, 144 Cal. App. 4th at 835. In short, *Wilson* read more into the *Daugherty* decision than is stated by the Court of Appeal in *Daugherty*. *Wilson*, 668 F. 3d at 1141-1143 (discussing *Daugherty*).

(b) **Recent California Decisions Make Clear That UCL and CLRA Omissions Claims Are Not Limited to Safety Concerns**

Significantly for this appeal, California courts have reiterated the broader omissions standard since *Daugherty*. The 2011 decision in *Collins* involved a "failure to disclose a computer defect." 202

39

Cal.App.4th 249. In holding that a duty to disclose a material
omission had been pled under the CLRA, the *Collins* court followed
the 1975 CLRA decision in *Outboard Marine*, which applied the four-
factor test and did not require a safety concern. *Id*. at 255 (citing
*Outboard*, 124 Cal. Rptr. 852).

The recent state opinion in *Rutledge v. Hewlett-Packard, Co.*
238 Cal. App. 4th 1164 (Ct. App. 2015), should also convince the
Court to take a fresh look at the expansive construction given *Wilson* .
In *Rutledge*, the Court of Appeal reversed summary judgment on UCL
and CLRA causes of action premised on omitted computer defects –
screens that would prematurely "dim and darken" – with no nexus to
product safety. *Id*. at 1173-1174, 1194. Hewlett-Packard contended
that "manufacturers do not have an independent duty to disclose a
product defect absent an unreasonable risk of 'physical injury or other
safety concern.'" *Id.* At 1173-1174. The Court of Appeal held that
"*Daugherty [ ]* preclude a duty to disclose material information
known to a manufacturer and concealed from a consumer." *Id.* At
1174. *Rutledge* even rejected as "incorrect" the "argument that the

expiration of the warranty period precludes a claim for fraudulent concealment under the UCL." *Id.* at 1175.

*Rutledge's* analysis and holding on the duty to disclose cannot be reconciled with the *Wilson* panel's narrower description of California law, four years ago, that a "manufacturer's duty to consumers is limited to its warranty obligations." *Wilson*, 668 F.3d at 1141. Some district courts have understood the need to revisit broad application of *Wilson* and some have not.

In light of *Rutledge*, a district court recently rejected the requirement of a safety concern to assert, as here, a material omissions claim. The district court explained that some "federal courts have adopted a 'safety concern' limitation" based on their interpretation of *Daugherty*, but *Rutledge* "clarified that this is a misreading of California law." *Norcia v. Samsung Telecomm. Am., LLC*, No. 14-cv-00582-JD, 2015 U.S. Dist. Lexis 110454, at *6 (N.D. Cal. Aug. 20, 2015). Noting its obligation to "ascertain and apply the existing California law," the district court rejected the defense argument that California's duty to disclose "was limited to defects relating to safety concerns." *Id.*

Further, in *In re Lenovo Adware Litigation*, 2016 U.S. Dist.

LEXIS 149958 (N.D. Cal. Oct. 27, 2016) Judge Whyte engaged in a

*detailed* analysis of whether *Wilson* should control in light of

subsequent indications by the California appellate courts that its

restriction of omission claims to situations involving safety is contrary

to California's consumer protection statutes. *Id.* at *44-47. Judge

Whyte declined to dismiss the plaintiffs' UCL and CLRA claims for

failure to allege either an affirmative misrepresentation or a safety

concern. *Id.* at * 47. *Lenovo* found that there is no clear and

convincing evidence that suggests that the California Supreme Court

would decide *Rutledge* differently—and, as explained by *Rutledge*,

the California Court of Appeal's earlier *Daugherty* decision does not

explicitly foreclose the possibility of a duty to disclose absent an

affirmative representation or safety concern. *Id.*, *citing*, *Daugherty*,

51 Cal. Rptr. 3d 118 (Ct. App. 2006).

Although a Ninth Circuit panel decision binds subsequent

panels,

*Wilson*'s broad statements regarding California law are "only binding

in the absence of any subsequent indication from the California courts

that this Court's "interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). The Court of Appeals decisions in *Collins* and *Rutledge* have provided that indication.[24]

In *Collins*, the Court of Appeal distinguished cases where a safety concern was required and permitted the plaintiff's CLRA claim related to defective floppy disks to proceed. *Collins*, 202 Cal. App. 4th at 258.

Notably, Judge Orrick, in *Rushing v. Williams-Sonoma, Inc.*, 2017 U.S. Dist. LEXIS 28227 (N.D. Cal. Feb. 28, 2017), commented on the district court's decision in the present case (*Sud*), noting that "[s]ince *Rutledge*, two courts in this district have allowed duty to disclose claims in absence of a safety concern." *Id*. at *17 and fn3, *citing*, *Lenovo Adware Litigation*, 2016 U.S. Dist. LEXIS 149958, at *12-13; and *Norcia,* 2015 U.S. Dist. LEXIS 110454 at *6. Judge Orrick also noted that "[o]ther cases have continued to follow *Wilson*, without acknowledging the arguably contrary holding in *Rutlege*." *Id.*,

---

[24] *Collins* preceded *Wilson* but was not final on appeal until the Ninth Circuit issued its opinion. Regardless, *Wilson* does not address *Collins*. *Rutledge* then followed *Collins* on the duty to disclose. *See Rutledge*, 238 Cal. App. 4th at 1174-1175.

*17 and fn. 4, *citing*, *Sud*, 229 F. Supp. 3d 1075 and *McCoy*, 173 F. Supp. 3d at 966.

There is no colorable contention the California Supreme Court would view the issue differently. "In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decisions of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *Andrade v. City of Phoenix*, 692 F.2d 557, 559 (9th Cir. 1982). Here, not only is convincing evidence lacking, but the California Supreme Court denied review, and depublication, in both *Collins* and *Rutledge*.[25]

Given the legal developments discussed above, the broad construction of *Wilson* has been superseded by subsequent California authority. In applying "'existing California law,'" this Court should say so or at least limit *Wilson* to its facts. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (2011) (adopting new reading of California law

---

[25] *Collins v. eMachines, Inc.*, No. S199244, 2012 Cal. LEXIS 1407 (Cal. Feb. 15, 2012); *Rutledge v. Hewlett-Packard Co.* (*Bizcom Elec.*), No. S228989, 2015 Cal. LEXIS 10869 (Cal. Nov. 10, 2015).

because Court of Appeal decision "indicates that our interpretation was incorrect").

1. **Materiality and the Four-Factor Test as Touchstones for Consumer Disclosure Do Not Create a Slippery Slope**

The district judges in the Related Cases expressed concern about a slippery slope and the need for limiting principles on omission claims. For example in *Sud* Judge White espoused the need for a bright line regarding what needs to be disclosed. *Sud*, 229 F. Supp. 3d at 1086. The district judges in the Related Cases posited that plaintiffs' claim about the necessity of point-of-sale disclosure of the slave-tainted supply chains lacked any limiting principles.

The California legislature, however, passed consumer protection statutes that eschew a bright line in favor of a flexible standard that could address *all* forms of unlawful, unfair and fraudulent practices that may arise.

Further, this flexibility standard does not create a litigation free for all. For an omissions-based claim to proceed, plaintiffs must overcome multiple hurdles. The omitted statement must be deemed

material and at least one prong in California's four-factor test must be established, as discussed above.[26]  A plaintiff must demonstrate—a fiduciary relationship, superior knowledge by the defendant, active concealment, or misleading partial representations.  These are limiting factors that dispel concerns about a slippery slope.

On the issue of materiality plaintiffs also meet their burden— certainly at the pleading stage.  As alleged in the FAC, consumers are not aware of the tainted supply chain [ER 191 (¶ 22)] and plaintiffs and consumers would not have purchased the seafood products if they had been aware of the tainted supply chain. [ER 195 (¶ 26)]. Plaintiffs support their statements with a study that concludes that 88% of consumers would not purchase a product associated with human rights abuses.  [ER 226 (¶ 146)].  The use of slave labor in Costco's supply chain is clearly material to consumer purchasing decisions.  "Pleading that one would not have otherwise purchased the product but for the misleading advertising also satisfies the consumer's obligation to plead a causal link between the advertising

---

[26] See, *e.g., Collins*, 202 Cal.App.4th at 256.

and the alleged economic injury." *Hinojos v. Kohl's Corp*., 718 F.3d at 1104, fn.5.

The California Supreme Court has also found that human rights abuses are material to purchasing decisions:

> [w]hether a diamond is conflict free may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations each time she looks at the ring on her finger. And whether food was harvested or a product manufactured by union workers may matter to still others.

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328-329 (2011); *see also Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1105 (9th Cir. 2013).

The California Supreme Court has also explicitly acknowledged the importance of labeling at the point of sale. "Simply stated: labels matter. The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source. *Kwikset*, 51 Cal. 4th at 328.

2.      **The UCL Fraudulent Prong, CLRA, and FAL**

As previously explained by the Ninth Circuit, with respect to the UCL, FAL, and CLRA, the liability "standard for all three statutes is the 'reasonable consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue." *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1132 (N.D. Cal. 2013) (*citing Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008)).  Thus the burden is less than the burden to prove common law fraud because only the likelihood of deception and not actual deception are required.  *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1144 (2001).

Considered in tandem, §§ 17200 and 17500 are "meant to protect the public from a wide spectrum of improper conduct in advertising." *Day*, 74 Cal. Rptr. 2d at 59-60.  Further, the CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices."  Cal. Civ. Code § 1760; *see also Wang v. Massey*

*Chevrolet*, 97 Cal. App. 4th 856, 869-870 (2002) (noting this provision's importance).

As explained, slave labor in Costco's supply chain for seafood is material to consumers— reasonable consumers would deem the omitted information important to their decision to purchase. As the California Supreme Court has observed: "For a significant segment of the buying public, labor practices do matter in making consumer choices." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 969 (2002). At a minimum, California's "reasonable consumer standard . . . raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (*quoting Williams*, 552 F.3d at 938); *see also Lilly v. ConAgra Foods, Inc*., 743 F.3d 662, 665 (9th Cir. 2014). This case—similar to the Related Cases—does not present the rare situations where resolution on a motion to dismiss is reasonable.

3.    **The CLRA and the UCL Unlawful Prong**

Plaintiffs allege that Costco's omission of information about the proven use of slave labor in its supply is likely to deceive a reasonable consumer in violation of Sections 1770(a) (5), (7,) (9), and (16)

because that omission relates to the characteristics and standards of the products (produced by slaves; produced by suppliers that do not abide by The Code). Nothing more need be alleged.

These CLRA violations in turn support the UCL unlawful prong claim. "In prohibiting 'any unlawful' business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1130 (9th Cir. 2014).

Further, defendant's practices are unlawful because sourcing and selling farmed prawns actively contributes to the use of slave labor in violation of bans on such human trafficking enacted by the U.S., California and by international conventions, including but not limited to the Tariff Act of 1930, the Anti-Trafficking in Persons Act, the UN Declaration of Human Rights, and California Penal Code § 236, § 237, *et seq.* In addition, Costco's conduct in representing that it enforces policies against the use of slave labor in the farming of the prawns it sells violates Civil Code § 1714.43. Costco's practices are also unlawful under California Business and Professions Code § 17500, *et seq.* and Civil Code § 1750, *et seq.*

4. **The UCL Unfair Prong**

Plaintiffs' allegations also readily satisfy either of the tests for violation of the UCL "unfair" prong. *Lozano v. AT&T Wireless Service, Inc.,* 504 F.3d 718 (9th Cir. 2007) (This Court has declined to apply a third FTC test under California law. *Id.* at 736.) Under the **first test**, unfairness must "be tied to a 'legislatively declared' policy." *Id.* at 736; *see also Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010) (Truth in Lending Act provides sufficient tether). Plaintiffs allege that Costco violates established public policy against the use of slave labor. For example, the United Nation's 1948 Universal Declaration of Human Rights states that "[n]o one shall be held in slavery or servitude; slavery and the slave trade shall be prohibited in all their forms." [ER00225].

Further, the Supply Chains Act addresses the market for goods and products "tainted" by slavery and human trafficking—crimes that are outlawed by state, federal, and international law. *Id.* In enacting the California Transparency Act, the Legislative Counsel's Digest stated that, "consumers…are **inadvertently** promoting and **sanctioning these crimes** through the purchase of goods and products

51

that have been tainted in the supply chain." See Legis. Counsel's Dig., Sen. Bill 556, ch. 556, §2(h), (2010 Reg. Sess.) (Emphasis added). [ER00226].

>    The legislature further stated that:

>    [a]bsent publically available disclosures, consumers are at a disadvantage in being able to distinguish companies on the merits of their efforts to supply products free from the taint of slavery and trafficking. Consumers are at a disadvantage in being able to force the eradication of slavery and trafficking by way of their purchasing decisions.

*Id.* at § 2(i). [ER00226].

>    Here, the "unfairness" is closely tethered to numerous legislatively declared policies – including the eradication of slave labor and making disclosures regarding slave labor available to consumers. Thus, plaintiffs sufficiently allege the first test for a UCL unfair prong claim.

>    Plaintiffs also adequately allege the **second test** for violation of the UCL unfair prong: whether the business practice is immoral, unethical, oppressive, unscrupulous and injurious to consumers, with

harm that outweighs any benefits associated with it. *See Lozano*, 504

F.3d at 735 (citing *South Bay Chevrolet v. Gen. Motors Acceptance

Corp.*, 85 Cal. Rptr. 2d 301, 316 (Ct. App. 1999)).

Here (and in the Related Cases) consumers suffer harm because

they have made purchases that they would not have made if use of

slave labor had been disclosed, and the business practices at issue (use

of slave labor, selling of slave derived products, and failing to disclose

slave labor) are all immoral, unethical, oppressive and unscrupulous.

In *Pastoria v. Nationwide Insurance*, the California Court of

Appeal found the balancing test satisfied where it could "not say that

the defendants' motives, reasons, or justifications for failing to notify

the plaintiffs outweigh[ed] the plaintiffs' interest in being fully

informed." 112 Cal. App. 4th 1490, 1498-1499 (2003); *see also,

Rubio*, 613 F.3d at 1204-05 (balancing test).

> 5.    **Costco is Not Shielded From Liability by
>        the Safe Harbor Doctrine—the Supply
>        Chains Act Provides no Safe Harbor**

As noted, the trial court did not reach Costco's argument that

liability is precluded by the safe harbor doctrine.  However, the

district courts in some Related Cases based dismissal on the safe

harbor doctrine, and plaintiffs believe that defendants may raise the

doctrine as alternative grounds for affirmance. This would be in error.

Costco urges that it has *no* liability under the Supply Chain Act

due to the "safe harbor" doctrine. [ER00175-00177]. This doctrine

applies in only two instances. The first is when the legislature has

decided to clearly permit challenged conduct. *Cel-Tech,*

*Communications, Inc., v. Los Angeles Cellular Telephone Co.,* 20 Cal

4th 163 (1999). However, the Supply Chains Act does not

affirmatively state that a supplier is permitted to omit disclosure of

slave labor in the supply chain. Rather, the Supply Chains Act

requires disclosure of the preventative measures used to ensure the

absence of slave labor—if any. Cal. Civ. Code § 1714.43 (c)(1)-(5).

Indeed, the Act does not mandate that preventative measures be taken,

only that the measures that are used be disclosed. The Supply Chains

Act does not make slave labor in the supply chain unlawful; however,

the Supreme Court has noted, "there is a difference between (1) not

making an activity unlawful, and (2) making that activity lawful."

*Cel-Tech, supra* at 183. The safe harbor doctrine does not shield Costco's nondisclosures under this theory.

The only other application of the safe harbor doctrine arises when other provisions of law "actually bar" the action. *Id.*; *See*, *also*, *Krumme v. Mercury Ins. Co.*, 123 Cal.App.4th 924, 940, n.5 (2004). However, the Supply Chains Act expressly allows other remedies, stating:

> (d) The exclusive remedy for a violation of this section shall be an action brought by the Attorney General for injunctive relief.
>
> **Nothing in this section shall limit remedies available for a**
>
> **violation of any other state or federal law**.

Cal. Civ. Code § 1714.43(d) (Emphasis added). Moreover, because the Supply Chains Act only requires reporting of preventative measures, there can be no safe harbor regarding the existence of slave labor. The scope of a safe harbor cannot be expanded or enlarged by judicial fiat to create "implied safe harbors" – which is what Costco seeks here – because the power to create and define such an exception to the UCL rests completely with the legislature. *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 804 (2006).

Costco's argument ignores the California Supreme Court's instruction that there is a difference between an omission not being made unlawful and being made lawful. *Davis v. HSBC Bank* (9th Cir. 2012) 691 F.3d 1152, 1167-8.

Nothing in the relevant statutes permits Costco to omit the existence of slave labor from its disclosures. There is no safe harbor.

### 6. Plaintiffs Have Standing to Seek Injunctive Relief

As noted, the court below also did not reach Costco's argument that plaintiffs lack standing to seek injunctive relief. In anticipation that Costco will renew its arguments to this Court, plaintiffs will briefly address the issue.

Costco contends that plaintiffs lack standing to seek injunctive relief because they do not allege they would buy prawns again. [ER 179]. As an initial matter, Costco's argument fails because the FAC alleges that plaintiffs *would* want to purchase the prawns again *under certain conditions*. [ER 197 (¶ 42.)] However, setting aside this point—and as discussed below, many courts have rejected Costco's argument— that once a consumer is educated and files a complaint

they lose standing because they would not buy the product again.

Adopting this argument would circumvent the intent of the California

legislature in enacting strong consumer protection statutes.

If as Defendant posits, a consumer relies on a defendant's

misrepresentation and later finds that the misrepresentations are false,

the consumer can never bring a cause of action seeking injunctive

relief, because the consumer will "not be deceived by the challenged

statements again."  This argument fails because it seeks to strip away

Plaintiffs' rights under California consumer protection laws.

This Court, like the courts below, should be reluctant to

embrace "the suggestion that plaintiffs' mere recognition of the

alleged deception operates to defeat standing for an injunction"

because "then injunctive relief would never be available in false

advertising cases, a wholly unrealistic result." *Ries v. Ariz. Bevs. USA*

*LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *see also*, *Mollicone v.*

*Universal Handicraft, Inc.*, 2017 U.S. Dist. LEXIS 14125, *22 (C.D.

Cal. Jan. 30, 2017)(same); *Cabral v. Supple, LLC*, 2012 U.S. Dist.

LEXIS 137365, *5-6 (C.D. Cal. Sept. 19, 2012); *Dean v. Colgate-*

*Palmolive Co*., 2015 U.S. Dist. LEXIS 80150, *20-23 (C.D. Cal. June 17, 2015).

As discussed in *Lilly*, plaintiffs will suffer ongoing economic injury if the Court adheres to defendant's narrowed reading of Article III standing because without relief from the Court a consumer cannot know if previous misrepresentations have stopped and whether the product is now the product she wants to buy. *Lilly v. Jamba Juice Co*., 2015 U.S. Dist. LEXIS 34498, at *11-*12. The court in *Lilly* held that "a consumer is not disabled from seeking injunctive relief against false labeling solely because she learns, after purchasing a product, that the label is false." *Id*.

As outlined above, a narrowed reading of Article III standing would undoubtedly thwart the legislative intent to protect consumers. Plaintiffs therefore request that the Court follow *Ries*, *Lilly*, and related cases to hold that plaintiffs meet the requirements of Article III standing.

## VI. CONCLUSION

The judgment should be reversed with directions to deny Costco's motion to dismiss. To the extent this Court's opinion

dictates that the complaint be amended to satisfy any pleading standard, plaintiffs respectfully request the opportunity to amend on remand.[27]

Dated: September 28, 2017          Respectfully submitted

**COTCHETT, PITRE & McCARTHY, LLP**

By: ___/s/ *Anne Marie Murphy*_____
  NIALL P. McCARTHY
  ANNE MARIE MURPHY

**HOWARD LAW FIRM**

 DEREK G. HOWARD

**JENKINS MULLIGAN & GABRIEL LLP**

 DANIEL J. MULLIGAN

---

[27] *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001).

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the

Ninth Circuit by using the appellate CM/ECF system September 28,

2017. I certify that all participants in the case are registered CM/ECF

users and that service will be accomplished by the appellate CM/ECF

system.

/s/ Adriana Hernandez

ADRIANA HERNANDEZ

## CERTIFICATE OF COMPLIANCE

Plaintiffs/Appellants certify that their Opening Brief complies with Circuit Rule 32. The Brief is proportionately spaced with Times New Roman typeface. The point size is 14. The word count is 9,798, excluding the table of contents, table of citations, table of definitions, statement of related cases, and this certificate of compliance.

## STATEMENT OF RELATED CASES

At the end of this Statement is a chart of cases that assert closely related legal issues to *Sud v. Costco Wholesale Corp*., 229 F. Supp. 3d 1075 (N.D. Cal. 2017) which are all currently before this Court ("Related Cases"). Although *Sud* was the first filed case of the eight related cases, it was the last to be dismissed without leave to amend by the District Court. Most of the Related Cases involve slave labor in the supply chain for seafood produced in Southeast Asia (like *Sud*), however, three of the cases involve slave labor in the supply chain of chocolate instead.

Counsel in *Sud* have closely monitored the appellate dockets in the Related Cases and had originally sought (and obtained) an extension of the briefing schedule in *Sud* in the hope that the Motion

to Certify Question to California Supreme Court would be granted in the Related Cases because counsel believe answer of the question by the California Supreme Court would have a significant, if not dispositive impact on *Sud*.  More specifically, the plaintiffs/appellants in the seven related cases have requested that the Ninth Circuit certify the following question to the California Supreme Court:

**Must a pure omission-based consumer deception claim under the UCL, FAL, and CLRA involve a safety concern to be actionable?**

As of the date this brief is being filed the Ninth Circuit has not ruled on the Motion to Certify Question to California Supreme Court and is instead scheduling oral argument in the Related Cases. Understanding that the Opening Brief in *Sud* cannot be postponed indefinitely, Plaintiffs are submitting this Opening Brief.

| District Court Decision | District Court and Appellate Case Number |
|---|---|
| *Barber v. Nestlé USA, Inc.*, 154 F. Supp. 3d 954 (C.D. Cal. 2015) | 9th Cir. Case No. 16-55041; C.D. Cal. Case No. 8:15-cv-01364-CJC |
| *Hughes v. Big Heart Pet Brands*, 2016 U.S. Dist. LEXIS 5508 (C.D. Cal. Jan. 15, 2016) | 9th Cir. Case No. 16-55212; C.D. Cal. Case No. 2:15-cv-08007-CJC |

| *De Rosa v. Tri-Union Seafoods, LLC*, 2016 U.S. Dist. LEXIS 5497 (C.D. Cal. Jan. 15, 2016) | 9th Cir. Case No. 16-55211; C.D. Cal. Case No. 2:15-cv-07540-CJC |
|---|---|
| *Wirth v. Mars Inc.*, 2016 U.S. Dist. LEXIS 14552 (C.D. Cal. Feb. 5, 2016) | 9th Cir. Case No. 16-55280; C.D. Cal. Case No. 8:15-cv-01470-DOC |
| *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016 (N.D. Cal. 2016) | 9th Cir. Case No. 16-15444; N.D. Cal. Case No. 3:15-cv-04450-JCS |
| *Dana v. Hershey Co.*, 180 F. Supp. 3d 652 (N.D. Cal. 2016) | 9th Cir. Case No. 16-15789; N.D. Cal. Case No. 3:15-cv-04453-JCS |
| *McCoy v. Nestle United States, Inc*., 173 F. Supp. 3d 954 (N.D. Cal. 2016) | 9th Cir. Case No.16-15794; N.D. Cal. Case No. 3:15-cv-04451-JCS |
| *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075 (N.D. Cal. 2017) | 9th Cir. Case No. 17-15307; N.D. Cal. Case No. 4:15-cv-03783-JSW |

Dated: September 28, 2017          Respectfully submitted,


**COTCHETT, PITRE & McCARTHY, LLP**


By:   /s/ *Anne Marie Murphy*
     NIALL P. McCARTHY
     ANNE MARIE MURPHY


**HOWARD LAW FIRM**

    DEREK G. HOWARD


**JENKINS MULLIGAN & GABRIEL LLP**

    DANIEL J.  MULLIGAN